62 So.3d 347 (2011)
SUCCESSION OF Harold Lloyd STARKS.
David Harold Starks, Plaintiff-Appellee
v.
Charski Wescott, Defendant-Appellant.
No. 46,233-CA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 2011.
*348 W. James Singleton, Shreveport, LA, Robert L. Pittard, for Appellant.
Ray C. Mayo, Jr., for Appellee.
Before BROWN, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
Charski Wescott appeals a judgment by the First Judicial District Court, Parish of Caddo, State of Louisiana dismissing his claims to annul the probated testament and remove the testamentary executor, David Harold Starks, in the Succession of Harold Lloyd Starks. For the following reasons, we reverse the trial court's judgment.

FACTS
On March 11, 1966, Harold Lloyd Starks executed a last will and testament in proper testamentary form (the "testament"). At that time, Starks was married to Frederica Sidenburg Starks, and they had two children: David and Deborah. Twenty-three years later, Harold Starks fathered a third child out-of-wedlock: Charski Wescott, the plaintiff in this matter. Starks' testament made no provision for the subsequent birth of a child.
In January 2004, the First Judicial District Court determined Harold Starks to be the natural and biological father of Wescott. Harold Starks subsequently died on May 20, 2004, and his testament was filed for probate in the First Judicial District Court on August 23, 2004. Starks' older son, David, was confirmed as executor for the succession, to serve without bond or security. The trial court issued Letters of Executorship to David.
Wescott filed his Petition to Annul Probated Testament or in the Alternative, to Remove Testamentary Executor. In his petition, Wescott claimed that Starks' testament was revoked as a result of his birth on February 11, 1989, relying on La. C.C. art. 1705, which, at the time, stated:
A testament is revoked by the posterior birth of a child to the testator or by the subsequent adoption of a child by the testator, unless the testator has declared in the testament that such an event shall not revoke the testament; provided however, that in no event shall this article be interpreted in such a manner as to impinge on the legitime of a forced heir.
David Starks, as executor, opposed the petition and argued that art. 1705 was repealed in 1999. After a hearing on the matter, the trial court rendered judgment against Wescott, and this appeal ensued.

DISCUSSION
On appeal, Wescott raises one assignment of error, arguing that the trial court erred in failing to nullify the probated *349 testament of his father that was previously revoked by operation of law in effect at the time of his birth. Pursuant to the former La. Ch.C. art. 1705, Wescott submits that Starks' testament was revoked by operation of law at the moment of Wescott's birth, and the subsequent repeal of the article and enactment of new revocation articles did not serve to revive the revoked testament. We agree.
As noted, previously La. C.C. art. 1705 served to revoke a testament upon the posterior birth of a child to the testator, unless the testator had made a contrary declaration to uphold the testament. However, the Louisiana Civil Code articles addressing the revocation of testaments was amended and reenacted by Act 1421 of 1997, effective July 1, 1999. That revision divided the types of testamentary revocations into either (1) a revocation of an entire testament (La.C.C. art. 1607) or (2) a revocation of a legacy or other testamentary provision (La.C.C. art. 1608). Louisiana C.C. art. 1705, which is at issue in this appeal, was repealed and no similar provisions for posterior born children were made in the revisions.
Currently, Art. 1609 permits a testator to revoke a testament, and later to revoke that revocation, unless the first revocation resulted from destruction of the testament, subsequent inter vivos disposition of the property, or the divorce of the testator. The revocation of Starks' testament did not occur in any of those three waysthe revocation in this case occurred by operation of law upon Wescott's birth. Starks himself did not take any affirmative action to revive the revoked testament prior to his death. Thus, the question arises: could the revocation (which occurred by operation of law) be later revoked by operation of law, upon the repeal of art. 1705, and subsequent enactment of new revocation articles in 1999? The parties appear to have no dispute that Starks' testament was revoked as a result of Wescott's birth in 1989, only whether the revocation survived the revision to the revocation articles in 1999.
Although there is no jurisprudence directly on point regarding the precise issue presented, the First Circuit case, In re Succession of Clark, 2008-1278 (La.App. 1st Cir.02/13/09), 6 So.3d 266, writ denied, 2009-0580 (La.05/13/09), 8 So.3d 568, is persuasive by analogy. In Succession of Clark, the court declined to give retroactive effect to La. C.C. art. 1608(5), which states:
Revocation of a legacy or other testamentary provision occurs when the testator:
* * * *
(5) Is divorced from the legatee after the testament is executed and at the time of his death, unless the testator provides to the contrary. Testamentary designations or appointments of a spouse are revoked under the same circumstances.
Winston Clark executed his testament on January 18, 1995, wherein he bequeathed all of his property to his wife, Mary Beth. In doing so, he disowned his son, Brian. Winston and Mary Beth were divorced in October 2003, and Winston died in November 2005. At the time of his death, Winston had not changed his will despite his divorce. Mary Beth, now the decedent's ex-spouse, filed a petition to probate Winston's testament. Subsequently, Brian filed a petition to declare that the testament had been revoked by operation of law, seeking to give La. C.C. art. 1608(5) (enacted July 1, 1999) retroactive effect to the testament executed prior to the change in law. As noted by the Succession of Clark court:

*350 Although this provision was in effect on the date of Winston's death, November 26, 2005, it was not in effect when Winston executed his testament on January 18, 1995. Article 1608(5) is a new provision and was a part of the revised law of successions adopted by 1997 La. Acts, No. 1421, § 1, which had an effective date of July 1, 1999. Thus, the issue of whether Brian has stated a cause of action under this provision depends on whether Article 1608(5) is applicable to a testament that was executed prior to the legislation's effective date when the testator's death occurred after that effective date.
Id. at 268-9. The Succession of Clark court concluded that art. 1608(5) should not be given retroactive effect, "especially since the testament was executed prior to the effective date of this law." Id. at 269.
Although the holding in Succession of Clark served to uphold the testament in that case, and the case sub judice seeks to annul the testament, the legal reasoning in Clark is still applicable. Both cases address the applicability of a change in the law after the execution of a testament. Although the appellee argues that the changes to the succession articles on revocation should be given retroactive effect to uphold the testament, it is a well-settled rule of statutory interpretation that substantive laws apply prospectively only. La. C.C. art. 6; Grambling State University v. Walker, 44,995 (La.App.2d Cir.03/03/10), 31 So.3d 1189. Despite the appellee's contention that the current revocation articles are not substantive law, it is clear that they are. "Substantive laws," for purposes of determining whether a law should be applied retroactively, are those which establish new rules, rights, and duties, or change existing ones. Id. at 1194. The articles on revocation address the substantive rights of testators and those inheriting from them and they should only be applied prospectively, unless specifically stated otherwise.
Succession of Clark demonstrates an instance where the appeal court refused to give a new revocation article retroactive effect. Here, the same analysis applies. We recognize the well-founded legal precept that the intent of a testator is an important consideration in the interpretation of a testament; however, we cannot ignore applicable law in order to uphold a testament that was revoked by operation of law. Starks' testament was written 23 years prior to the birth of Wescott; thus it is apparent why he was not mentioned in the testament. Notably, there was no evidence given at the trial court regarding Starks' intent; i.e., other than his testament written 23 years prior to Wescott's birth, there was no evidence suggesting that he did not want to provide for his third child and that Starks necessarily wished his revoked testament to be revived.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. All costs of this appeal are assessed to David Harold Starks.
REVERSED.